**In Re Donald Gene RAGSDEL, and Audrey Marie Ragsdel, Debtors.**

**Rice P. Burns, Jr., Trustee, Plaintiff,**

**v.**

**Farmers State Bank n/k/a Citizen's State Bank, and Platinum Financial Services Corporation, Defendants.**

**Bankruptcy No. 07–10522–399.**

**Adversary No. 09–1004–399.**

United States Bankruptcy Court, E.D. Missouri, Southeastern Division.

June 10, 2009.

Rice P. Burns, Jr., Sikeston, MO, pro se.

Karen J. Miller, Spain, Miller & Spain, LLC, Poplar Bluff, MO, Elizabeth J. Early, St. Louis, MO, for Defendants.

**OPINION DETERMINING THE EXTENT AND VALIDITY OF HOME LIENS**

BARRY S. SCHERMER, Chief Judge.

The issue before the Court is when Donald Gene Ragsdel ("Debtor") acquired an interest in certain real estate and whether

a judicial lien attached to the property. On January 20, 2009, Trustee Rice P. Burns, Jr. ("Trustee") filed a Complaint against Farmers State Bank N/K/A Citizen's State Bank ("Farmers") and Platinum Financial Services Corporation ("Platinum") to determine the extent and validity of home liens. The Trustee represents himself and Farmers is represented by counsel. Platinum has not filed a response to the Complaint. The matter was submitted on stipulated facts and letter briefs. The Court took the matter under advisement and now issues this Opinion.

## FACTS

On April 14, 1988, the Debtor's parents executed a Warranty Deed ("Deed") purporting to list the Debtor as a tenant in common of the parent's residence. The Deed was signed by Lowell and Neva Ragsdel, the Debtor's parents, as grantors in favor of their four children; Dorothy Pullum, Paul Ragsdel, Ineva Barker and Donald Ragsdel as tenants in common.[1] The Deed was not recorded. At some point the Debtor's mother placed the Deed in a safe-deposit box, owned jointly by the mother and two of her children, without the knowledge of any of her children. It is not known when the Deed was placed in the safe deposit box. The Debtor's mother continued to live at the Property, insure the property, and pay the associated real estate taxes.

Farmers obtained a judgment against the Debtor in state court in the amount of $18,975.33 on January 14, 2003, and Platinum obtained a judgment against the Debtor in state court in the amount of $4,092,32 on August 12, 2003. Each judgment was issued by a court of record.

The Debtor and his wife filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 23, 2007. The Trustee filed a No Asset Report. The Debtor

and his wife received a discharge on December 7, 2007. The same day, the Debtor's mother died. The unrecorded Deed was discovered in the mother's safe deposit box on or about December 14 or 15, 2007, by two of the Debtor's siblings. The Deed was subsequently recorded on December 18, 2007, by an attorney.

On or about April 16, 2008, the Trustee was notified by the Debtor's attorney that the family had discovered the deed and that the real estate was subject to being sold. The land was later sold and the Debtor received $12,794.05 as his share of the proceeds.

The Trustee alleges that the Debtor acquired an interest in the Property in December 2007 as a result of the mother's death and that such interest became property of the Debtor's bankruptcy estate pursuant to 11 U.S.C § 541(a)(5). Farmers argues that the Debtor acquired an interest in the Property when the Deed was executed or when the Deed was placed in the jointly-owned safe deposit box. If the Debtor acquired an interest in the Property in 1988 when the Deed was executed and presumably placed in the safe-deposit box, Farmers' lien attached to the Debtor's interest in the Property on January 14, 2003, the date Farmers obtained the judgment. The Trustee asserts that there was not an effective delivery of the Deed, and, accordingly, the Debtor did not own an interest in the real estate pre-petition to which the judicial liens attached.

This Court must decide when the Debtor acquired an interest in the property. If the Debtor acquired an interest pre-petition, the judicial lien of Farmers attached to the property and, accordingly, attached to the sale proceeds. On the other hand, if the Debtor did not acquire an interest in the real estate until post-petition, Farmers

---

1. Lowell Ragsdel died before the Debtor filed his bankruptcy petition.

had no interest in the property on the petition date and the Trustee is entitled to avoid the post-petition lien pursuant to 11 U.S.C. § 549 and keep the sale proceeds for the benefit of the Debtor's bankruptcy estate.

## LEGAL CONCLUSIONS

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(k) and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(k).

The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). The estate includes any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition and that the debtor acquires or becomes entitled to acquire within 180 days after such date by bequest or inheritance. 11 U.S.C. § 541(a)(5)(A). The parties do not dispute the Debtor's mother died within 180 days of filing the petition. The parties disagree as to whether the Debtor had an interest in the real estate as of the petition date.

■ The transfer of an interest in real property is accomplished by deed. The essential elements of a deed are: (1) names of the parties thereto, (2) words of grant, (3) description of the property, (4) execution and delivery by the grantor, and (5) acceptance by the grantee. *Celtic v. Tinnea*, 254 S.W.3d 137, 142 (Mo.App.E.D. 2008). In the present case, the elements of delivery and acceptance are in dispute. The Trustee's position is that the Deed was not delivered and accepted by the Debtor pre-petition; rather, it was delivered and accepted post-petition after its discovery in the safe-deposit box.

Farmers cites *O'Mohundro v. Mattingly*, 353 S.W.2d 786, 792 (Mo.1962) to support its argument that the parties intended a transfer when the Deed was executed. In the *O'Mohundro* case, Mr. O'Mohundro executed a deed in favor of his niece. The deed was kept in a trunk at O'Mohundro's home until it was brought to the Bank of Fisk for safe keeping. The deed was placed in the bank's vault until 1950 when O'Mohundro rented a safe deposit box and placed the deed there. The issue in the case was whether the deed was ever delivered to the niece. The *O'Mohundro* court held that the grantor of the deed had the burden of proving nondelivery, and that the evidence was insufficient to support the cancellation of nondelivery. The burden of showing nondelivery rests upon the party who seeks to invalidate a deed upon such ground. *Id.* Farmers argues that because the deed was executed and placed in a safe deposit box jointly owned by the mother and two of her children, delivery can be assumed to have occurred at the time the deed was placed in the safe deposit box.

The Court disagrees. In *O'Mohundro*, the grantee had actual knowledge of the deed in question before the grantor's death. In the case at hand, there is no evidence that the Debtor or any of his siblings had any knowledge, either express or constructive, of the deed before it was discovered in the safe deposit box after the mother's death. There may have been intent on behalf of the mother; however, the delivery of the deed did not occur until after her death.

■ The Trustee argues that for delivery to be valid, the grantor must transfer all dominion and control over the property and that the grantor cannot reserve a right to revoke or recall the deed. *Klatt v. Wolff*, 173 S.W.2d 933, 936 (Mo.1943). Delivery must be made with intent to presently pass title. *Id.* In order to determine if the grantor intended to presently pass

title and deliver the Deed, several factors are examined. Whether the deed was recorded is one of the factors examined. Courts have found that the recording of a deed, even by the grantor, does not in itself operate as delivery. *Wilkie v. Elmore*, 395 S.W.2d 168, 172 (Mo.1965). In the case before the this court, the Deed was never recorded until after the mother's death and could have been destroyed by the mother at any time. Therefore, the intention of the mother to immediately transfer the property was not present.

The reservation of a life estate is another relevant factor. The Deed did not reserve a life estate to the mother. Such a reservation would have raised a strong presumption that the mother intended that title should immediately vest in the grantees. *Shroyer v. Shroyer*, 425 S.W.2d 214, 221 (Mo.1968). There is a presumption of nondelivery, in view of the stipulated facts that the Deed was in the mother's possession at the time of her death and that the deed was not then recorded. *Id.* at 220.

The Trustee also argues that acceptance of the transfer of an interest in the Property did not occur until after the mother's death. Acceptance is determined by the subsequent actions and conduct of the grantee. *Ragan v. Ragan*, 445 S.W.2d 825, 826 (Mo.1969). Farmers cites to this case to show that the Debtor's actions of recording the deed and selling the property show acceptance by the Debtor. The Court agrees with this; however, acceptance by the Debtor occurred post-petition.

The Court finds that the Debtor had no knowledge of the Deed until after the mother's death. Because of this, delivery and acceptance of the Deed could not have been accomplished until that point. Without delivery and acceptance of the Deed pre-petition, the lien cannot have attached to the Property until after the mother's death post-petition. Accordingly, Farmers' lien is subject to avoidance.

## CONCLUSION

The Debtor acquired an interest in the Property only after his mother died and the deed was discovered and subsequently recorded. The Debtor's interest in the Property became part of his bankruptcy estate when he acquired an interest therein by inheritance within 180 days after he filed his bankruptcy petition. Farmers' judicial lien could not have attached to the Property pre-petition because the Debtor had no interest in the Property on the petition date. To the extent Farmers' lien attached post-petition when the Debtor acquired an interest in the Property, such lien shall be avoided pursuant to Section 549 of the Bankruptcy Code. The Debtor's share of the proceeds of the sale of the Property is property of the Debtor's bankruptcy estate free and clear of any of lien Farmers. A separate judgment shall enter in favor of the Trustee and against Farmers in accordance with this Opinion.